1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                   **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    AGAPITO JOSE GALVAN,                    No. 1:23-cv-01415-SKO

12                   Petitioner,              **ORDER ON PLAINTIFF'S SOCIAL
                                              SECURITY COMPLAINT**
13          v.

14    MARTIN O'MALLEY,                        (Doc. 1)
      COMMISSIONER OF SOCIAL
15    SECURITY, [1]

16                   Defendant.

17

18                          **I.      INTRODUCTION**

19
             Plaintiff Agapito Galvan ("Plaintiff") seeks judicial review of a final decision of the
20
      Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application
21
      for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act").
22
      (Doc. 1).  The matter is currently before the Court on the parties' briefs, which were submitted,
23
      without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]
24

25

26    _____

      [1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration. *See*
27    https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42
      U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office
      of the Commissioner shall, in [their] official capacity, be the proper defendant.").
28    [2] The parties have consented to the jurisdiction of the U.S. Magistrate Judge.  (*See* Doc. 11).

1

## II.    BACKGROUND

2       Plaintiff was born on January 12, 1976.  (Administrative Record ("AR") 293).  Plaintiff

3   filed a claim for DIB on November 30, 2021, alleging a disability onset of date of September 22,

4   2021.  (AR 207).  In his application, he alleged disability based on the following: "Post-

5   Traumatic Stress Disorder (PTSD"), migraines, Obstructive Sleep Apnea, Chronic Fatigue

6   Syndrome, Lumbar spondylosis, Left Shoulder Sprain, Right Shoulder Sprain, Left hand

7   tenosynovitis, left iliopsoas tendinitis, and Left patellofemoral pain."  (AR 243).  Plaintiff

8   completed two years of college and has specialized training in HVAC.  (AR 244).  Plaintiff

9   previously served in the U.S. Army.  (AR 244).

10   **A.    Relevant Evidence of Record**[3]

11       Plaintiff suffers from various ailments, including degenerative disc disease, which affect

12   his ability to walk.  (AR 26).  On February 22, 2022, providers issued Plaintiff a front-wheeled

13   walker for home use (AR 527), and they fitted him for a cane over the phone on March 10, 2022.

14   (AR 1028).  On April 8, 2022, Plaintiff reported that he was using his father's rollator and he used

15   a cane at home.  (AR 611).  The visit notes from that date indicate that healthcare providers

16   measured Plaintiff's height and weight, and that they ordered Plaintiff a rollator to be delivered to

17   his home.  (AR 611).  Plaintiff was not using an assistive device at medical appointments on July

18   15, 2022, and September 28, 2022.  (AR 756, 792).  On September 28, 2022, Plaintiff trialed a

19   quad cane and a rollator while at the clinic.  (AR 793).  He was unstable on the quad cane, but he

20   felt decreased pain in his lower back and legs and increased stability with the rollator.  (AR 793).

21   Encounter notes from December 12, 2022, indicate that Plaintiff was not using an assistive device

22   during his medical appointment.  (AR 1091).

23       Roger Wagner, M.D., performed a consultative physical medical exam on March 5, 2022.

24   (AR 598).  In his report, Dr. Wagner noted that Plaintiff was "easily able to get out of the chair in

25   the waiting room and walk at a normal speed back to the exam room without assistance."  (AR

26   597).  He noted that Plaintiff "claimant was able to walk several steps on toes and heels. He had

27

28

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

1    normal station, normal gait, normal finger-nose and negative Romberg," and that Plaintiff did not

2    use an assistive device.  (AR 597-98).  On June 11, 2022, Dale H. Van Kirk, M.D., performed a

3    consultative exam and reached similar conclusions.  (AR 716).  He noted that Plaintiff "sits

4    comfortably in the examination chair, gets up and out of the chair, walks around the examination

5    room and gets on and off the bench without difficulty. . . . I do not detect a limp." (AR 717).  Dr.

6    Van Kirk, the consultative examiner, also stated that no assistive device had been prescribed, and

7    he found one was not medically necessary.  (AR 718-19).

8           State agency medical consultants reviewed Plaintiff's records in March and July 2022, and

9    neither included any limitations in Plaintiff's RFC related to an assistive device.  (AR 92-95, 117-

10   19).  L. Bobba, M.D., a State Agency medical consultant, reviewed Plaintiff's claim in July 2022,

11   and noted that Plaintiff uses a walker and cane.  (AR 112).  Dr. Bobba also noted that Plaintiff

12   had been referred to physical therapy for a walker evaluation and that he used his father's rollator.

13   (AR 112).  Plaintiff testified at his February 2, 2023, hearing that he uses an assistive device 100

14   percent of the time. (AR 67).

15   **B.     The ALJ's Decision**

16          Plaintiff filed a claim for DIB on November 30, 2021, alleging a disability onset of date of

17   September 22, 2021.  (AR 207).  The Commissioner denied Plaintiff's application initially on

18   April 5, 2022, and again upon reconsideration on August 19, 2022.  (AR 102, 127).  Plaintiff

19   requested a hearing before an Administrative Law Judge (an "ALJ"), and the parties attended a

20   hearing on February 2, 2023.  (AR 50).  Plaintiff was unrepresented.  In a decision dated June 26,

21   2023, the ALJ found that Plaintiff was not disabled as defined by the Act after conducting the

22   five-step disability analysis set forth in 20 C.F.R. § 404.1520.  (AR 20).

23          At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since

24   September 22, 2021 (step one).  (AR 25).  At step two, the ALJ found Plaintiff suffers from the

25   following severe impairments: degenerative disc disease; obesity; traumatic brain injury; Post-

26   Traumatic Stress Disorder; depression; and anxiety (20 CFR 404.1520(c)).  (AR 26).  Plaintiff did

27   not have an impairment or combination of impairments that met or medically equaled one of the

28   listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).

1    (AR 26).

2          The ALJ then assessed Plaintiff's residual functional capacity (RFC)[4] and applied the

3    assessment at steps four and five.  *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three

4    to step four, we assess your residual functional capacity . . . . We use this residual functional

5    capacity assessment at both step four and step five when we evaluate your claim at these steps.").

6    The ALJ found Plaintiff could perform the following:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently. He could sit
> about 6 hours in an 8-hour workday with normal breaks. He could stand and/or
> walk about 6 hours in an 8-hour workday with normal breaks. This capacity most
> closely approximates light work as defined in 20 CFR 404.1567(b) except he could
> only occasionally climb ramps or stairs; occasionally climb ladders, ropes, or
> scaffolds; and occasionally balance, stoop, kneel, crouch, or crawl. He is limited to
> following simple work instructions. He could have only occasional contact with
> coworkers or the general public.

12   (AR 28-29).

13         At steps four, the ALJ found that Plaintiff could not perform any past relevant work and

14   the transferability of job skills was not material because considering the claimant's age,

15   education, work experience, and residual functional capacity, there were jobs that exist in

16   significant numbers in the national economy that Plaintiff could perform.  (AR 42).  The ALJ

17   based this finding on the testimony of the Vocational Expert ("VE"), who testified at Plaintiff's

18   hearing that he could perform the following jobs: Routing Clerk (Dictionary of Occupational

19   Titles ("DOT") 222.687-022)); Merchandise Marker (DOT 209.587-034); and Collator Operator

20   (DOT 208.685-010) (AR 42).  The ALJ concluded Plaintiff was not disabled under the Social

21   Security Act.  (AR 43).

22         Plaintiff sought review of this decision before the Appeals Council, which denied review

23   on July 10, 2023.  (AR 5).  Therefore, the ALJ's decision became the final decision of the

24

---

25   [4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work
     setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES
26   II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P
     (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an
     individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's
27   RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence,
     and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable
28   impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

1    Commissioner.  20 C.F.R. § 404.981.

2                                    **III.    LEGAL STANDARDS**

3    **A.    Applicable Law**

4        An individual is considered "disabled" for purposes of disability benefits if he or she is

5    unable "to engage in any substantial gainful activity by reason of any medically determinable

6    physical or mental impairment which can be expected to result in death or which has lasted or can

7    be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §

8    423(d)(1)(A).   However, "[a]n individual shall be determined to be under a disability only if

9    [their] physical or mental impairment or impairments are of such severity that he is not only

10   unable to do [their] previous work but cannot, considering [their] age, education, and work

11   experience, engage in any other kind of substantial gainful work which exists in the national

12   economy." *Id.* § 423(d)(2)(A).

13       "The Social Security Regulations set out a five-step sequential process for determining

14   whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*,

15   180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520).   The Ninth Circuit has

16   provided the following description of the sequential evaluation analysis:

17       In step one, the ALJ determines whether a claimant is currently engaged in
         substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ
18       proceeds to step two and evaluates whether the claimant has a medically severe
         impairment or combination of impairments. If not, the claimant is not disabled. If
19       so, the ALJ proceeds to step three and considers whether the impairment or
         combination of impairments meets or equals a listed impairment under 20 C.F.R.
20       pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled.
         If not, the ALJ proceeds to step four and assesses whether the claimant is capable
21       of performing [their] past relevant work. If so, the claimant is not disabled. If not,
         the ALJ proceeds to step five and examines whether the claimant has the [RFC] . .
22       . to perform any other substantial gainful activity in the national economy. If so,
23       the claimant is not disabled. If not, the claimant is disabled.

24   *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).   "If a claimant is found to be 'disabled' or

25   'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*,

26   180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

27       "The claimant carries the initial burden of proving a disability in steps one through four of

28

                                               5

1    the analysis."  *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

2    1989)).  "However, if a claimant establishes an inability to continue [their] past work, the burden

3    shifts to the Commissioner in step five to show that the claimant can perform other substantial

4    gainful work."  *Id.* (citing *Swenson*, 876 F.2d at 687).

5    **B.      Scope of Review**

6            "This court may set aside the Commissioner's denial of [social security] benefits [only]

7    when the ALJ's findings are based on legal error or are not supported by substantial evidence in

8    the record as a whole."  *Tackett*, 180 F.3d at 1097 (citation omitted).  "Substantial evidence . . . is

9    'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might

10   accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)

11   (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d

12   1141, 1154 (9th Cir. 2020).

13          "This is a highly deferential standard of review . . . ."  *Valentine v. Comm'r of Soc. Sec.*

14   *Admin.*, 574 F.3d 685, 690 (9th Cir. 2009).  "The ALJ's findings will be upheld if supported by

15   inferences reasonably drawn from the record."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th

16   Cir. 2008) (citation omitted).  Additionally, "[t]he court will uphold the ALJ's conclusion when

17   the evidence is susceptible to more than one rational interpretation."  *Id.*; *see, e.g.*, *Edlund v.*

18   *Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one

19   rational interpretation, the court may not substitute its judgment for that of the Commissioner."

20   (citations omitted)).

21          Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

22   specific quantum of supporting evidence.'"  *Tackett*, 180 F.3d at 1098 (quoting *Sousa v.*

23   *Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a

24   whole,  weighing  both  evidence  that  supports  and  evidence  that  detracts  from  the

25   [Commissioner's] conclusion.'"  *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

26          Finally,  courts  "may  not  reverse  an  ALJ's  decision  on  account  of  an  error  that  is

27   harmless."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc.*

28   *Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear

1   from the record that 'the ALJ's error was inconsequential to the ultimate nondisability

2   determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d

3   880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon

4   the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)

5   (citations omitted).

6                                          **IV.    DISCUSSION**

7           Plaintiff contends, *inter alia*, that the ALJ's RFC determination is not supported by

8   substantial evidence because the ALJ failed to obtain a medical opinion detailing Plaintiff's

9   physical RFC, specifically related to his need for an assistive device.  The Court concludes the

10  ALJ did not err.

11  **A.      Legal Standard**

12          Claimants carry the burden to prove they are disabled.    20 C.F.R. § 404.1512(a).

13  However, "Social Security proceedings are inquisitorial rather than adversarial."  *Schiaffino v.*

14  *Saul*, 799 Fed. App'x 473, 476 (9th Cir. 2020) (quoting *Sims v. Apfel*, 530 U.S. 103, 111–12

15  (2000)).   An ALJ has a responsibility to develop a "complete medical history" and to "make

16  every reasonable effort to help [the plaintiff] get medical reports."  20 C.F.R. § 404.1512(d).

17  "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the

18  claimant's interests are considered.'"  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003)

19  (quoting *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983)).

20          The ALJ is not a mere umpire at such a proceeding . . . . it is incumbent upon the
            ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all
21          the relevant facts. He must be especially diligent in ensuring that favorable as well
            as unfavorable facts and circumstances are elicited.
22

23  *Id.* (quoting *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir. 1992)).  However, the duty to develop

24  the record further is only triggered when there is ambiguous evidence or the record does not allow

25  for proper evaluation of the evidence.   *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

26  2001).  The ALJ's duty to develop the record fully is heightened when a claimant is mentally ill

27  and unable to protect his or her own interests.    *Id.*   An ALJ may discharge the duty by

28  subpoenaing claimant's doctors, submitting questions to claimant's physicians, continuing the

1    hearing, or keeping the record open after the hearing to allow supplementation of the record.

2    *Tonapetyan*, 242 F.3d at 1150.

3    **B.      Analysis**

4           Plaintiff contends that because Plaintiff was not fitted for a rollator walker until more than

5    one month after the last State agency consultation was completed in July 2022, the ALJ did not

6    have sufficient information to determine whether Plaintiff required an assistive device.  (*See* Doc.

7    16 at 6).  Plaintiff contends that based on that fact, combined with Plaintiff's testimony that he

8    required an assistive device 100 percent of the time, the ALJ had a duty to develop the record and

9    obtain an updated medical opinion regarding Plaintiff's need for an assistive device.  (Doc. 16 at

10   6).

11          First, Plaintiff's contention that the record was inadequate because "the consultants had

12   not considered Plaintiff's need for a walker, rendering the record devoid of the required medical

13   documentation," is not entirely accurate.  (Doc. 19 at 2).  Dr. Bobba, who reviewed Plaintiff's

14   application on reconsideration in July 2022, noted that Plaintiff used a walker and cane.  (AR

15   112).  Dr. Bobba also noted that Plaintiff had been referred to physical therapy for a walker

16   evaluation, and that he used his father's rollator.  (AR 112).  Accordingly, Plaintiff's argument

17   that the State agency consultants did not have records related to Plaintiff's need for an assistive

18   device are unpersuasive.  While Plaintiff was not formally fitted for a rollator until after Dr.

19   Bobba rendered his opinion, Dr. Bobba considered records showing, and noted in his opinion,

20   that Plaintiff had been using assistive devices, including the rollator for which he was later fitted,

21   for months.  Plaintiff's contention that Dr. Bobba lacked significant, relevant medical information

22   because he did not know Plaintiff would later be fitted for a rollator is unpersuasive as Dr. Bobba

23   was aware and noted that Plaintiff used such a device.  The ALJ also considered other medical

24   opinions in the record related to Plaintiff's need for an assistive device.  Dr. Wagner and Dr. Van

25   Kirk both performed consultative physical exams, and in July 2022, Dr. Kirk found an assistive

26   device was not medically necessary.

27           Further, state examiners' opinions are not rendered unsupported simply because they do

28   not review every record.  S*ee Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671,

1    at *6 (C.D. Cal. May 4, 2020) ("[T]he fact that a non-examining state agency physician fails to

2    review the entire record does not, by itself, mean that his or her opinion cannot serve as

3    substantial evidence").  Indeed, "there is always some time lapse between a consultant's report

4    and the ALJ hearing and decision."  *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020).  While

5    the State agency physicians' RFC assessment did not consider Plaintiff's fitting for a rollator, the

6    ALJ did consider all the evidence Plaintiff cites and accounted for these records in developing the

7    RFC.  (AR 31-44).  To the extent that Plaintiff argues the ALJ required a medical opinion to

8    specially dictate what Plaintiff's RFC, the determination of a claimant's RFC is wholly within the

9    province of the ALJ.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041-1042 (9th Cir. 2008) ("[T]he

10    ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence.").  An RFC

11    is based on all the evidence in the record, and the ALJ is charged with considering and weighing

12    that evidence.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1042.[5]

13        Plaintiff has also failed to identify an ambiguity in the record triggering the ALJ's duty to

14    develop the record further, even considering that he was unrepresented at the hearing.  "The mere

15    existence of medical records post-dating a State agency physician's review does not in and of

16    itself trigger a duty to further develop the record."  *Lamas v. Saul*, 2020 WL 6561306, at *10

17    (E.D. Cal. Nov. 9, 2020) (citing *Charney v. Colvin*, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21,

18    2014), aff'd, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the

19    opinions by State agency physicians where the ALJ considered records entered into the record

20    after the agency physicians rendered their opinions and those opinions were not inconsistent with

21    RFC).

22        The ALJ considered evidence that while Plaintiff had access to assistive devices, one

23    consultative examiner noted that he was "easily" able to walk at a "normal speed" (AR 597), and

24    another found that an assistive device was not medically necessary.  (AR 717).  The ALJ also

25

26    [5] Plaintiff states that the ALJ erred because "the determination as to whether an assistive device is medically necessary is one reserved for medical professionals and is not one that the ALJ can perform on her own." (Doc. 16 at

27    6).  As the Defendant notes, Plaintiff misreads Social Security Ruling (SSR) 96-9p5.  SSR 96-9p states that an ALJ cannot find that a hand-held assistive device is medically required unless the record includes "medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances

28    for which it is needed."  SSR 96-9p, *available at* 1996 WL 374185.  In short, SSR 96-9p places the burden on the Plaintiff to provide medical documentation before an ALJ can find an assistive device is necessary.

considered the one medical record (that Plaintiff had been fitted for a rollator) Dr. Bobba could not consider because it was generated after Dr. Bobba's review.  Accordingly, that information was ultimately accounted for when formulating Plaintiff's RFC.

Plaintiff has not identified any ambiguous medical evidence that the ALJ was unfit to interpret because the ALJ summarized the physicians' medical evidence, and did not interpret the medical evidence directly.  *See Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) (ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC."); *Bufkin v. Saul*, 836 Fed. App'x 578, 579 (9th Cir. 2021) ("Contrary to [plaintiff's] argument, the ALJ did not rely on her 'lay interpretation' of medical evidence. Rather, the ALJ simply summarized the medical evidence from [physicians]; she did not interpret any x-rays or test results directly. ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination.").  As noted above, the only record the Plaintiff uses to advance his claim is a visit record indicating that Plaintiff was formally fitted for one type of assistive device that several providers noted he had already been using.  Plaintiff has not established this singular fact rendered the record so ambiguous as to prevent the ALJ from being able to formulate an RFC.  Accordingly, the ALJ was within his discretion to abstain from ordering an exam.  S*ee Pederson v. Colvin*, 31 F. Supp. 3d 1234, 1244 (E.D. Wash. 2014) ("[T]he Commissioner 'has broad latitude in ordering a consultative examination.' ") (quoting *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001)); *see, e.g., Albrecht v. Astrue*, No. 1:11–cv–01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency).

Accordingly, the Court finds the RFC was supported by substantial evidence, and there was no ambiguity in the record that would trigger the ALJ's duty to develop the record further.

## V.     CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of

1  Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant

2  Martin O'Malley, Commissioner of Social Security, and against Plaintiff Agapito Galvan.

3

4  IT IS SO ORDERED.

5  Dated:   **August 27, 2024**                        /s/ *Sheila K. Oberto*
                                              UNITED STATES MAGISTRATE JUDGE
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28